IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANNA L. ROBERTS,

            Plaintiff,                               6:14-cv-01111-MC

                                                      OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

            Defendant.

_____

MCSHANE, Judge:

      Plaintiff Janna L. Roberts filed this action October 15, 2010, seeking judicial review of

the Commissioner of Social Security's final decision denying her application for disability

benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social

Security Act (the "Act").   This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C.

§ 405(g) and 1383(c)(3).

      The Commissioner concedes that the ALJ erred in several respects and moves (# 18) for

remand.  The parties disagree on whether the court should remand for further administrative

Page 1 - OPINION AND ORDER

proceedings or for payment of benefits.  For the reasons stated below, the Commissioner's

decision is REVERSED and this matter is remanded for payment of benefits.

## STANDARD OF REVIEW

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000),

*cert. denied,* 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.  A

remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been fully developed and the evidence

is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r,* 635 F.3d 1135, 1138-

39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)).  The court

may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a

claimant is disabled under the Act.  *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award

of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for

rejecting such evidence; (2) there are no outstanding issues that must be resolved before a

determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited.  *Id.*  The "credit-as-true"

doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision.

*Connett v. Barnhart,* 340 F.3d 871,  876 (citing *Bunnell v. Sullivan,* 947 F.2d 871 (9th Cir. 2003)

(en banc)).  The reviewing court should decline to credit testimony when "outstanding issues"

remain.  *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The Commissioner concedes that the ALJ did not properly assess the medical opinion of

an examining physician, the disability opinion of the Vocational Rehabilitation Division,

Plaintiff's credibility, and lay witness statements, resulting in an improper residual functional

capacity assessment.  The Commissioner argues unresolved issues remain and there is serious

doubt as to whether Plaintiff is in fact disabled.

**A.  Frances J. Storrs, M.D.**

Dr. Storrs, a dermatologist, examined Plaintiff in April 2003, and conducted patch tests of

Plaintiff's skin.  Tr. 574-99.  He diagnosed an allergic contact dermatitis to formaldehyde,

quaternium-15, cinnamic aldehyde, and fragrance.  Tr. 580.  Dr. Storrs told Plaintiff to avoid

products containing formaldehyde and provided lists of products to avoid.  Tr.  581,  589-94.

The ALJ did not address Dr. Storrs' opinion.

The Commissioner concedes that the ALJ erred, but argues that Dr. Storrs' opinion should

not be credited as true because the record is ambiguous.  The Commissioner contends that the

August 2008 examination of Plaintiff by John French, M.D., did not result in limitations arising

from an allergy to formaldehyde.  Dr. French examined Plaintiff at the request of Vocational

Rehabilitation to assess functional limitations.  Tr. 612-14.  Dr. French noted in the first

paragraph of his report that Plaintiff showed him "some records that she brought in from the

medical school dermatology clinic where she was noted to have a formaldehyde allergy and an

allergy to Quaternium-15, various fragrance[s], cinnamic aldehyde, and nickel."  Tr. 612.  Under

"Allergies," Dr. French wrote "aloe."  Tr. 613.  Under "Dermatologic" he wrote "Positive for nail

changes.  Type: splitting.  Puritus," and under "Immunology" he wrote "positive for contact

dermatitis.  Type: latex."  Tr. 614.

The Commissioner cites a May 2010 chart note where a treating physician and treating

nurse did not assess Plaintiff with any limitations in work-related exposure to formaldehyde.  Tr.

763. The cited records indicate that Plaintiff called Kaiser Permanente requesting a note excusing her from court mandated community service. Tr. 762. Mark W. Olson, M.D., noted Plaintiff should "avoid latex gloves but non-latex gloves are ok, " and limited her to lifting no more than 20 pounds due to tendonitis. Tr. 763.

The Commissioner contends that the evidence regarding Dr. Storrs' diagnosis is ambiguous and contradictory. It is not. The ALJ failed to state any reason for rejecting Dr. Storrs' uncontradicted opinion, and the opinion is credited as true.

## B. Oregon Vocational Rehabilitation Division

Ronald Kittelson is a counselor at the Oregon State Office of Vocational Rehabilitation Services where Plaintiff received intermittent services from January 2008 to December 2013. Tr. 304-520. In September 2008 Mr. Kittelson found Plaintiff "Most Significantly Disabled," and determined Plaintiff had impediments to employment, including social isolation, cognitive deficits, and a lack of physical or emotional stamina to perform essential functions of work. Tr. 331.

The Vocational Rehabilitation definition of "Individual with a significant disability" is:

> "an individual with a disability. . .Who has a severe physical or mental impairment that seriously limits one or more functional capacities (such as mobility, communication, self-care, self-direction, interpersonal skills, work tolerance, or work skills) in terms of an employment outcome; (ii) Whose vocational rehabilitation can be expected to require multiple vocational rehabilitation services over an extended period of time; and (iii) Who has one or more physical or mental disabilities resulting from. . .mental illness. . .or another disability. . . .

34 C.F.R. § 361.5(b)(31).

The Vocational Rehabilitation determination of disability is not binding on the Social Security Administration. 20 C.F.R. § 404.1504. However, Social Security Ruling 06-3p states that "evidence of a disability decision by another governmental...agency cannot be ignored and

Page 4 - OPINION AND ORDER

must be considered.  The Ruling states that "the adjudicator should explain the consideration given to these decisions. . . ."

The Ninth Circuit has determined that an ALJ must ordinarily give great weight to a Veterans Administration determination of disability.  *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).  The Ninth Circuit noted that the programs are similar but not identical.

The Vocational Rehabilitation disability criteria are similar to the SSA criteria, and the ALJ is required to give "persuasive, specific and valid reasons" supported by the record to reject that determination.  *Id.*

The Commissioner concedes the ALJ erred by not discussing Mr. Kittelson's assessment, but argues that the record is ambiguous and that remand to the Agency is required.  The Commissioner cites Dr. French who "determined Plaintiff could perform light/medium work." Defendant's Brief at 8.  In August 2008, Dr. French wrote "[f]unctionally at this time due to the back musculoskeletal status, she would appear to be okay for work in the light/medium work range, no lifting over 25 pounds. . . . She may have some depression which could slow her psychomotor functioning."  Tr. 614.  Dr. French did not offer an opinion as to Plaintiff's ability to work an eight-hour day or 40 hour week.  Mr. Kittelson had Dr. French's report when he made his assessment.

The Commissioner argues that Mr. Kittelson's assessment that Plaintiff had "cognitive deficits impairing work quality and productivity," conflicts with her 3.49 grade point average and the fact that she impressed her supervisors at the Community Based Work Evaluation/Experience with her office skills and learning ability.   However, this is the same Work Evaluation that concluded Plaintiff could work only part time.  Tr. 510, 513.  On this record, the evidence is not ambiguous and remand for further proceedings is not required.

Page 5 - OPINION AND ORDER

**C. Plaintiff's Credibility and Lay Testimony**

Plaintiff testified she was 50 years old and completed ninth grade.  Tr. 41.  Thereafter she completed her GED and was attending Portland State University.  She had been at PSU for two years, and prior to that was at Chemeketa Community College for four or five years.  She thought she would finish her degree in a year.  Tr. 42.  She does all of her course work online. She did not do well in school when she had to go to the campus because she has "a hard time going into classroom settings."  Tr. 43.  She failed or withdrew from classes she took on campus. She was allowed extra time for tests and had access to a tutor.  Tr. 56.

Plaintiff last worked in 2008 providing childcare for her grandchildren.  Tr. 44.  Through Vocational Rehabilitation, she worked for one month as an intern at the State Lands office.  Tr. 47.  She retrieved files for one or two people.  Tr. 48.  She was able to do the job but could not work as many hours as she hoped.  Tr. 49.  She started working four hours a day, four days a week, but had to reduce her hours to three days a week for three to four hours because of "paralyzing pain from my low back into my legs."  *Id.*  She does not know what causes the back pain, but she has had it for a long time.

Plaintiff testified she works a couple of hours on her school work, then takes a break to move around, and works a couple more hours.  Tr. 50.  Asked what makes her unable to work, Plaintiff testified,  "Oh, I know I can't work more than three hours a day. . .[b]ecause I just tried . . .[w]hen I was doing the work experience."  Tr. 50-51.  She has "to be able to get up and down." She was able to get up and down when she did the file clerk job.  Her legs swell if she sits too long.  Tr. 52.

Plaintiff had depression when she last worked, but now she doesn't "feel comfortable around people.  I don't trust people.  I don't even go outside my house 90 percent of the time.

My kids have to practically drag me out." Tr. 54.  Plaintiff testified that her husband went to prison for raping her daughter, after which Plaintiff was in an abusive relationship.  She started isolating herself, and the only people allowed in her house are her children and grandchildren.  In her house she isolates in her room.  She has to force herself to go out to an appointment.  Tr. 55. She does not want to have to deal with people.

Plaintiff will walk alone to the 7 Eleven on the corner, where she does 90 percent of her shopping.  Tr. 55.  She quit attending church "a couple of years ago," because "I feel like everybody's just judging me, and making me feel bad."  Tr. 56.

Plaintiff worked at Kettle Foods for about two and half years.  She was working in the seasoning department when she developed allergies that caused her hands to crack "so badly that if I even opened my hand or shut my hand my hands would start bleeding."  Tr. 58.  She saw a specialist at Oregon Health Sciences University, and now she avoids chemicals by doing dishes once a week and buys food that does not require her to use dishes.  Plaintiff referred to a list of products she avoids.

Plaintiff has tendonitis in her right hand, and can type for about 30 to 45 minutes before she stops.  Tr. 61. She cannot carry her laundry, and cannot concentrate unless it is completely quiet.  Tr. 61-62.  Plaintiff worries about germs in her house.  Tr. 63.  She stays in her room "because that's the only area that's mine that I know that's just mine – I mean that I don't have anybody else touching things, and you know, wiping their noses, or sneezing, or -" She uses bleach to clean and keeps a can of Lysol to spray the toilet seat whenever she uses it.  Her furniture is covered in plastic.  Plaintiff rides the bus to appointments, but does not like the people.  "Not only do you get to deal with the body odor, you got to deal with people touching rails and poles, and all kinds of stuff.  It's just gross."  Tr. 65.

Page 7 - OPINION AND ORDER

On November 9, 2010, Plaintiff's daughter, Jennifer Yoder, reported she saw her mother at least ten hours a week. Tr. 267. Ms. Yoder drove her mother to appointments, and said Plaintiff could "barely move sometimes, and she gets stressed out very easily. She has severe mood swings and a lot of depression. She needs help unlocking doors and opening cans of food due to a lack of range of motion." *Id.* Ms. Yoder stated that anxiety, severe asthma, and acid reflux prevent her mother from sleeping. Tr. 268. Plaintiff microwaves frozen dinners, cleans, and does laundry. Ms. Yoder described her mother as compulsively clean. Tr. 269. She shops weekly for about 30 minutes, and plays computer games. Tr. 271. She is often "overly emotional" and takes things the wrong way or too personally. *Id.*

Ms. Yoder reported her mother cannot bend, squat, lift or kneel, and that she has trouble stair climbing, completing tasks, concentrating, using her hands, and getting along with others. Tr. 272. Plaintiff does not handle stress well, and has an unusual fear of germs. Tr. 273.

On January 30, 2013, Ms. Yoder**,** wrote:

> Many of the classes that she has taken, we have taken together. I have been able to help her. She has needed help because she has trouble with mathematical concepts. I help her phrase her thoughts because she has difficulties putting them into words. She works in spurts because she can only stay focused for brief periods. She needs frequent breaks because she will say that she is hurting, or she will become distracted.

Tr. 536.

The ALJ found Plaintiff not fully credible. Tr. 19-20. The ALJ considered Ms.Yoder's statements and gave them "little weight." Tr. 24. The Commissioner concedes that the ALJ did not properly evaluate either witness, and argues that remand for further proceedings is appropriate.

The ALJ failed to provide "specific, clear and convincing reasons" for rejecting

Page 8 - OPINION AND ORDER

Plaintiff's testimony. *Vaasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)).  Her testimony is consistent with the evaluation conducted by Vocational Rehabilitation and the Community Based Work Evaluation/Experience.

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Ms. Yoder's reports are consistent with Plaintiff's testimony and the Vocational Rehabilitation and Community Work evaluations.

If these opinions and testimony are credited, the ALJ would be required to find Plaintiff disabled.  The Vocational Expert testified that if a person were unproductive for any reason for ten percent or more of the time, that would preclude gainful activity.  Tr. 79.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. The decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

Dated this 17th day of June, 2015.


/s/ Michael McShane
Michael McShane
United States District Judge

Page 9 - OPINION AND ORDER

Page 10 - OPINION AND ORDER